Andrew Richards, AKBA # 1211109
GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, WA 98101
Tel: (206) 464-3939
Fax: (206) 464-0125
arichards@gsblaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| INTER-COOPERATIVE EXCHANGE, an Alaska cooperative corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, and NATIONAL MARINE FISHERIES SERVICE,<br><br>Defendants. | CASE NO. 3:18-cv-00227-TMB<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER FOIA<br><br>(5 U.S.C. § 552(a)(4)(B)) |

Plaintiff, Inter-Cooperative Exchange ("ICE"), alleges as follows:

**INTRODUCTION**

1. ICE is a cooperative of fishermen who harvest and deliver crab in the Bering Sea and Aleutian Islands ("BSAI"). ICE brings this action under the Freedom of Information Act ("FOIA") to compel defendant National Marine Fisheries Service ("NMFS") to release agency records related to an agency official's purported interpretation of an arbitration standard that is used to resolve disputes over the price paid for crab delivered by ICE members. ICE is responsible for arbitrating crab prices on behalf of its members and has been harmed by NMFS's failure to search

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-cv-00227-TMB

Page 1

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 1 of 15

for, improper withholding of, and improper redaction of the arbitration-related agency records requested by ICE.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this FOIA action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question jurisdiction) and §§ 2201-2202 (Declaratory Judgment Act).

3. ICE filed a FOIA request on July 18, 2017 and an appeal of defendant NMFS's response on December 15, 2017. The appeal remains pending as of the date of this Complaint, 291 days later. NMFS has failed to comply with the applicable time limit provisions of FOIA, and ICE is accordingly deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

4. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) because this is the district in which the agency records at issue are situated, and pursuant to 28 U.S.C. § 1391(b)(2) and (3) because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, and the defendants are subject to the court's personal jurisdiction.

## PARTIES

5. Plaintiff ICE is a cooperative corporation organized under Alaska law.

6. Defendants – United States Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA"), and NMFS – are "agencies" as defined in FOIA. NOAA is an agency within the Department of Commerce. NMFS is an agency within NOAA.

## BACKGROUND

7. ICE seeks agency records related to the crab price arbitration system component of the BSAI Crab Rationalization Program (the "Program"). The Program was developed by the North Pacific Fishery Management Council ("Council") and was implemented in 2005 by NMFS

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 2

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 2 of 15

through federal regulations at 50 C.F.R. § 680.10 *et seq.* It is co-managed on an ongoing basis by NMFS, the Council, and the State of Alaska.

8. The Program allocated harvesting and processing privileges for certain species of crab among various classes of participants in the harvesting and processing sectors and entities organized under the Western Alaska Community Development Quota Program. *See Ten-Year Program Review for the Crab Rationalization Management Program in the Bering Sea/Aleutian Islands* (Council, June 2016), p. 19, available at http://legistar2.granicus.com/npfmc/meetings/2016/6/939_A_North_Pacific_Council_16-06-06_Meeting_Agenda.pdf ("Ten Year Review"). The cited page 19 is attached as Appendix 1 to this Complaint.

9. As described further below, the Program eliminated the competitive crab processing market for 90% of deliveries made under crab fishing privileges allocated to catcher vessel owners. To mitigate its anticompetitive effects, the Program includes a crab price arbitration system that is designed to preserve the historical division of crab fishery revenues between harvesters and processors that was previously determined by market forces. The arbitration system is critical to protecting ICE members' ability to secure a fair price for crab.

Crab Price Setting Before the BSAI Crab Rationalization Program

10. Before the Program was implemented, there were no regulatory limits on the amount of crab that any particular processor could buy, subject to an overall limit on the amount of crab that could be harvested in each crab fishery. Price setting in the context of that competitive processing market was driven by negotiations between crab harvesters and the major crab processors.

11. Harvesters typically used two strategies for leverage during price negotiations. In some seasons, harvesters would delay fishing after the opening of the season to pressure processors

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-cv-00227-TMB

Page 3

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 3 of 15

to pay a higher price for harvests. At other times, harvesters would promise additional deliveries to the processor that offered an acceptable price to induce higher price offers.

12. Processors used several strategies to maintain or increase crab delivery market share. These included paying bonuses in excess of the negotiated ex-vessel price; applying favorable crab grading standards; and paying price premiums or bonuses for deliveries into ports that were remote from the fishing grounds or at which goods and services were more difficult to obtain.

13. While ex-vessel prices were determined by a number of factors, processor competition for delivery market share was one of the most significant.

## BSAI Crab Rationalization Program

14. Beginning in 2005, the Program fundamentally restructured the way in which crab harvesting and processing activities – including crab price setting – are conducted in the affected crab fisheries.

15. The Program limited participation in the affected crab fisheries to only those harvesters and processors that could demonstrate that they met certain historical participation criteria during specific qualifying years. Eligible harvesters and processors received privileges in the form of individual shares of the total allowable catch for each fishery in which they participated during the qualifying years.

16. 90% of crab harvested under shares allocated to catcher vessel owners may only be delivered to processors holding Program processing privileges and cannot be delivered elsewhere. Each eligible processor is restricted to buying an amount of crab equal to or less than its processing privileges will allow.

17. The Program thus effectively eliminated processor market share competition for 90% of crab harvested under catcher vessel owner shares and delivered for processing. That

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 4

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 4 of 15

competition historically had been one of the most important factors in ex-vessel price negotiations between harvesters and processors.

## Crab Price Arbitration System

18. The Council recognized the potential anticompetitive effects of allocating the crab delivery market while it was developing the Program, and incorporated a crab price arbitration system into the Program in an effort to mitigate its displacement of market forces.

19. The arbitration system includes a process that begins with a "formula arbitrator" preparing a non-binding fleet-wide price formula, which is intended to guide, but not control, price negotiations between harvesters and processors. When negotiations fail, binding arbitration of unresolved price disputes is conducted by a "contract arbitrator." ICE participates in binding crab price arbitrations on behalf of its members.

20. Under Program regulations, both the formula arbitrator and the contract arbitrator are required to "establish a price that preserves the historical division of revenues in the fishery," while considering nine listed factors. 50 C.F.R. § 680.20(g)(2)(ii)(B) (formula arbitrator) and § 680.20(h)(4)(i)(B) (contract arbitrator).

21. The Council's adoption of a standard requiring that the arbitrator's selected price preserve the historical division of crab fishery *revenues* followed the Council's consideration and rejection of a standard that would have preserved the division of *rents*. The rejected division of *rents* standard would have encouraged inefficiency by treating the costs of harvesting and processing operations as a given and dividing fishery revenues only to the extent those revenues exceeded costs. The chosen division of *revenues* standard allocates total fishery revenues between harvesters and processors, leaving each of them responsible for controlling their respective costs but positioned to reap the benefits of their own efficiencies.

GARVEY SCHUBERT BARER
Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 5

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 5 of 15

22. Consistent with the choice of an arbitration standard based on a division of revenues rather than rents, cost of business is not included as one of the listed factors to be considered by arbitrators. The exclusion of cost of business was "deliberate" and reflected the "understanding there could be an incentive to artificially inflate costs in order to secure a higher percentage of the first whole sale [sic] value." Ten Year Review, p. 176.

## Council Review of the Arbitration System

23. In 2014, nine years after the implementation of the Program with its crab price arbitration system, Alaska voters approved an initiative to raise the minimum wage. In response, crab processor representatives requested that the Council re-visit the consideration of costs – such as wages paid to processor employees – under the arbitration system.

24. At its June 2016 meeting in Kodiak, the Council obliged by passing a motion that required a discussion paper analyzing whether costs should be considered going forward, while implicitly acknowledging that the existing arbitration system does not account for costs:

> The Council will begin a discussion paper that will analyze the changing operational costs of crab IFQ holders and crab IPQ holders and the impacts of such cost changes on the historical distribution of first wholesale revenue that has been divided between crab harvesters and processors.
>
> The analysis should review the current criteria used by the non-binding price formula arbitrator to allow the Council to determine if operational cost changes to the participants in the crab fisheries should be considered in setting the non-binding price formula.

A copy of that motion is attached as Appendix 2.

25. The motion passed unanimously after all voting members of the Council, including the NMFS representative, approved.

26. The discussion paper was completed and delivered to the Council for a meeting in Anchorage from April 5-10, 2017. The paper made clear that if the Council took no action, "the status quo interpretation of the [arbitration] standards would prevail and operational cost would not

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 6

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 6 of 15

be considered in the price formula or by the contract arbitrators." *See Discussion Paper: Consideration of Operational Costs in the Crab Arbitration System* (Council, April 2017), p. 15, available at http://legistar2.granicus.com/npfmc/meetings/2017/4/955_A_North_Pacific_Council_17-04-03_Meeting_Agenda.pdf.

27. NMFS's voting seat on the Council for the arbitration system issue at the April 2017 Council meeting was occupied by the agency's Assistant Regional Administrator for the Alaska Region (the "ARA"). The ARA introduced a motion stating that costs *could be* considered under the existing arbitration system, contrary to the June 2016 motion unanimously approved by all voting members of the Council, including the NMFS representative, acknowledging that costs currently *could not be* considered:

> The Council recommends that a letter be sent to the formula arbitrator noting that the formula arbitrator has the ability to consider operational costs under the existing standards for arbitration.

A copy of that motion is attached as Appendix 3.

28. The Council voted against the ARA's motion on April 9, 2017 and took no action on the arbitration system.

Assistant Regional Administrator's Purported Interpretation of the Arbitration Standard

29. As noted in the discussion paper, no action by the Council meant that "the status quo interpretation of the [arbitration] standards would prevail and operational cost *would not be* considered in the price formula or by the contract arbitrators" (emphasis supplied).

30. Nevertheless, just six weeks after the Council took no action while rejecting the ARA's motion, the ARA persisted with his apparent personal opinion that costs *could be* considered under the current arbitration standard.

31. "I," wrote the ARA in a May 25, 2017 email to harvester and processor representatives, "can find no regulation that would prohibit the Formula Arbitrator from

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 7

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 7 of 15

GARVEY SCHUBERT BARER
*Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939*

considering relevant cost information from [harvester and processor participants] in the fishery." A copy of that email is attached as Appendix 4.

## FOIA Request, Response, and Appeal

32. On July 18, 2017, ICE submitted a FOIA request to NMFS in an effort to determine the record behind the ARA's motion at the April 2017 Council meeting – which contradicted the motion that the Council unanimously approved at its June 2016 meeting – and the statements in the ARA's May 25, 2017 email – which were inconsistent with the Council's rejection of the ARA's motion at its April 2017 meeting.

33. ICE's FOIA request sought two categories of agency records:

### Category 1

All correspondence to or from Glenn Merrill, Assistant Regional Administrator for the Alaska Region of NMFS, from January 1, 2016 through the present relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

For purposes of this request, the term "correspondence" includes without limitation all emails, text messages, social media messages, voice mails, facsimiles and letters, regardless of whether sent from or received on government or personal devices or transmitted through some other means.

The search for responsive correspondence should include without limitation correspondence to or from: (i) employees of NMFS and the office of National Oceanic and Atmospheric Administration General Counsel (NOAA GC); (ii) North Pacific Fishery Management Council (Council) members and staff; (iii) employees and/or representatives of entities that harvest, process, market and/or sell BS/AI crab or crab products; (iv) employees and/or representatives of trade associations or business leagues that represent entities described in clause (iii), above; (v) employees and/or representatives of entities that held BS/AI crab "quota shares" (QS), "processor quota shares" (PQS), "individual fishing quota" (IFQ), "individual processing quota" (IPQ) and/or "community development quota" (CDQ) (all as defined under NMFS regulations) during the period January 1, 2016 through present; and (vi) Mr. John Sackton.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-cv-00227-TMB

Page 8

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 8 of 15

GARVEY SCHUBERT BARER
Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

Category 2

All documents relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

For purposes of this request, the term "documents" includes without limitation all analyses, memoranda, minutes, motions, notes, papers and other records, and all drafts of the same.

A copy of the ICE FOIA request is attached as <u>Appendix 5</u>.

34. NMFS responded to ICE's FOIA request by letter dated September 21, 2017. The agency noted it would be producing what it described as 146 responsive records, including several emails with redactions allegedly pursuant to certain FOIA exemptions. A copy of NMFS's response is attached as <u>Appendix 6</u>.

35. Among other deficiencies with the agency's response, the produced records do not include any texts to or from the ARA covered under Category 1 of ICE's FOIA request, and the response does not refer to and therefore appears to have ignored Category 2 of ICE's FOIA request.

36. An ICE representative raised the issue of text messages with a NOAA attorney during a meeting on October 5, 2017.

37. The NOAA attorney did not deny that the ARA had sent or received text messages responsive to ICE's FOIA request.

38. Instead, the attorney stated that NMFS had not searched for text messages in response to ICE's FOIA request.

39. That statement is surprising considering it was made less than a month after the agency had agreed to produce similar records in response to a FOIA request at issue in *Cause of Action Institute v. National Oceanic and Atmospheric Administration*, Case No. 1:17-cv-01329-DLF (D. D.C.). After being sued, the agency agreed to search for and produce any Google Hangout or Google Chat messages responsive to a FOIA request for correspondence involving NMFS

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 9

officials who attended the April 2017 meeting of another fishery management council. *See* Joint Status Report, p. 2 ECF No. 12, (Sept. 9, 2017).

40. In any event, the NOAA attorney's explanation was not acceptable to ICE, which filed an administrative appeal of NMFS's response on December 15, 2017. A copy of the appeal is attached as <u>Appendix 7</u>.

41. To date, NMFS has not substantively responded to ICE's administrative appeal. But the records that the agency has produced so far show why it is critical that the agency be compelled to search for and produce text messages and other agency records that apparently continue to be improperly withheld.

<u>Processor Communications with Assistant Regional Administrator</u>

42. Records that have been produced reveal that, ahead of the April 2017 Council meeting, NMFS intended to recommend that no action be taken on the arbitration system issue. A draft motion was circulated internally within NMFS before the meeting stating that "the Council recommends no further action at this time." A copy of the draft motion is attached as <u>Appendix 8</u>.

43. But that is not the version of the motion that NMFS ended up introducing at the meeting following communications between a crab processor representative and the ARA.

44. On April 7, 2017, the processor representative sent an email to the ARA complaining that the Council's Advisory Panel "couldn't get to a letter." This is an apparent reference to a letter that the processor representative wanted the Council to send, taking the position that costs could be considered under the current arbitration standard.

45. Ten minutes after receiving that email, the ARA responded by asking "Where are you?" The processor representative replied four minutes later by saying that the "AP [Advisory Panel] just broke and I left." A copy of the April 7, 2017 email thread is attached as <u>Appendix 9</u>.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 10

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 10 of 15

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

46. NMFS has not produced any other emails between the ARA and the processor representative from the April 2017 Council meeting. But it appears there may have been further communications between those two during the meeting, because the draft of the NMFS motion was soon changed to include the letter sought by the processor representative as noted in the representative's initial email sent on April 7, 2017.

47. Two days later, on April 9, 2017, a revised motion was prepared that had evolved from recommending no action to urging that "a letter be sent to the formula arbitrator noting that the formula arbitrator has the ability to consider operational costs under the existing standards for arbitration." A copy of the revised motion is attached as Appendix 10. It reflects the language that appeared in the motion that the ARA ultimately introduced to the Council and which the Council rejected, as discussed above and attached as Appendix 3.

48. ICE believes there are further agency records, in the form of messages in text or other formats, reflecting discussions of the NMFS motion between the ARA and other individuals. ICE's belief is based on the NOAA attorney's failure to deny the existence of such messages when asked by the ICE representative as discussed above, and on the common knowledge in the industry that the ARA routinely texts about NMFS and Council matters.

Assistant Regional Administrator Ignored ICE

49. ICE's FOIA request may not have been necessary if the ARA had been as accessible to harvesters as the ARA was to the processor representative.

50. On April 8, 2017, an ICE representative sent the ARA an email requesting a discussion of "the crab binding arbitration issue with you before it comes up at the Council" the next day. A copy of that email is attached as Appendix 11.

51. The ICE representative's email was sent one day after the ARA received and responded to the email from the processor representative about the same topic, as discussed above.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Page 11

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 11 of 15

GARVEY SCHUBERT BARER
Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

But unlike the processor representative's email, the ICE representative's email received no response from the ARA.

52. Left in the dark about the ARA's thinking and perplexed that the ARA had purported to personally interpret the arbitration standard following the rejection of the ARA's motion, ICE turned to FOIA to discover the record behind those actions, which implicate the arbitration system that is so critical to ICE members receiving a fair price for crab.

## CLAIMS FOR RELIEF

### First Claim for Relief
*Failure to Search for and Improper Withholding of Agency Records*
(5 U.S.C. §§ 552(a)(3)(A), (C) and (4)(B))

53. ICE incorporates and re-alleges paragraphs 1 to 52 above.

54. NMFS has failed to make reasonable efforts to search for, and has improperly withheld, agency records responsive to both Categories 1 and 2 of the ICE FOIA request.

55. NMFS has therefore violated 5 U.S.C. § 552(a)(3)(A) and (C) and, pursuant to 5 U.S.C. § 552(a)(4)(B), NMFS and the other defendants should be compelled to search for and produce the requested records, including without limitation text messages, social media messages, voice mails and other correspondence to and from the ARA, as described in the ICE FOIA request.

### Second Claim for Relief
*Improper Redaction*
(5 U.S.C. § 552(a)(4)(B), 16 U.S.C. § 1852(i)(2)(F))

56. ICE incorporates and re-alleges paragraphs 1 to 52 above.

57. In response to ICE's FOIA request, NMFS produced a heavily-redacted email thread, excerpts of which are attached as Appendix 12.

58. The thread begins with an email sent by a Council staff person on April 6, 2017 while that staff person was attending the Council's April 2017 meeting.

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY** Page 12
**AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 12 of 15

59. The email summarizes the staff person's conversation with the ICE representative referenced above, in which the ICE representative expressed concerns about the Council potentially issuing a letter regarding the consideration of costs under the arbitration standard:

> Just a heads up, [the ICE representative] wanted to talk to me today about the crab arbitration issue. He is wondering whether it would even be legal for the council to write a letter and give [an arbitrator] the 'new authority' to include costs in the price formula without an regulatory amendment with the proper public comment period. [The ICE representative] said if we didn't need to change the language of the standards, we Would be changing tthe application of them, and he thought that might be questionable under the Administrative procedures act and MSA.

60. The remainder of the thread is largely redacted but appears to contain further discussion of the issues raised by the ICE representative among the Council staff person; the ARA, who occupied the NMFS voting seat on the Council for those issues; and the NOAA attorney referenced above, who sits at the Council table during its meetings and routinely responds to questions from Council members.

61. The thread reflecting the ICE representative's attempted outreach about the contemplated letter on costs under the arbitration standard begins and ends on April 6, 2017. That was the day before the processor representative raised the issue of such a letter from the Council in an email to the ARA on April 7. It was two days before the ICE representative tried to reach the ARA via email on April 8. And it was three days before the ARA introduced a motion at the Council meeting on April 9 recommending a letter – which the ARA apparently discussed beforehand with the processor representative, the Council staff person, and the NOAA attorney adviser to the Council, but not with the ICE representative.

62. NMFS's redaction of the April 6, 2017 emails is improper, for at least two reasons.

63. First, the emails constitute part of the "administrative record" of the April 2017 Council meeting and "records or other documents which were made available to or prepared for or by the Council, committee, or panel incident to the meeting," and as such "shall be available for

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-cv-00227-TMB

Page 13

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 13 of 15

public inspection and copying at a single location in the offices of the Council or the Secretary, as appropriate." 16 U.S.C. § 1852(i)(2)(F) (Section of the Magnuson-Stevens Fishery and Conservation Management Act governing operations of regional fishery management councils). That public-disclosure provision of the Magnuson-Stevens Act supersedes the FOIA exemptions under which NMFS has redacted the emails.

64. Second, NMFS failed to explain how it could "reasonably foresee [ ] that disclosure [of the emails in unredacted form] would harm an interest protected by [the asserted] exemption[s]," in violation of 5 U.S.C. § 552(a)(8)(A).

65. NMFS and the other defendants should be compelled pursuant to 5 U.S.C. § 552(a)(4)(B) to produce the emails without any redaction.

## REQUEST FOR RELIEF

WHEREFORE, ICE requests the following relief:

1. For a judicial declaration that NMFS and the other defendants have violated FOIA by failing to search for, by improperly withholding, and by improperly redacting the agency records requested by ICE;

2. For an order compelling NMFS and the other defendants to search for and produce the agency records requested by ICE that have not yet been produced and to re-produce the April 6, 2017 emails without redaction;

3. For an award of ICE's reasonable attorney fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E) and any other applicable authority; and

4. For such other and further relief as the Court may deem necessary and appropriate.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-cv-00227-TMB

Page 14

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 14 of 15

GARVEY SCHUBERT BARER
Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

DATED this 2nd day of October, 2018.

GARVEY SCHUBERT BARER

By: *s/ Andrew Richards*
Andrew Richards, AKBA # 1211109
1191 Second Avenue, Suite 1800
Seattle, WA 98101
Tel: (206) 464-3939
Fax: (206) 464-0125
arichards@gsblaw.com

*Attorneys for Plaintiff*

GARVEY SCHUBERT BARER
*Eighteenth Floor*
*1191 Second Avenue*
*Seattle, Washington 98101-2939*
*(206) 464-3939*

**COMPLAINT FOR DECLARATORY** Page 15
**AND INJUNCTIVE RELIEF UNDER FOIA**
*Inter-Cooperative Exchange v. U.S. Dept. of Commerce, et al.*
Case No. 3:18-CV-00227-TMB

Case 3:18-cv-00227-TMB   Document 1   Filed 10/02/18   Page 15 of 15