BRYAN SCHRODER
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Richard.Pomeroy@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| INTER-COOPERATIVE EXCHANGE, an Alaska Cooperative Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| U.S. DEPARTMENT OF COMMERCE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, and NATIONAL MARINE FISHERIES SERVICE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | Case No.  3:18-cv-00227-TMB |

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Inter-Cooperative Exchange ("ICE") has sued the United

States Department of Commerce ("DOC"), National Oceanic and Atmospheric

Administration ("NOAA") and the National Marine Fisheries Service ("NMFS")(collectively "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Defendants have properly discharged their FOIA obligations by performing a reasonable search for records, properly identifying responsive records, producing releasable documents or portions of documents, and invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to ICE's FOIA request. The government has properly discharged its duties under FOIA and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## FACTUAL BACKGROUND

Plaintiff ICE is a cooperative of fishermen who harvest and deliver crab in the Bering Sea and Aleutian Islands. ICE brought this FOIA action to compel defendant National Marine Fisheries Service ("NMFS") to release agency records related to an agency official's purported interpretation of an arbitration standard that is used to resolve disputes over the price paid for crab delivered by ICE members.[1] The present motion for summary judgment concerns that FOIA request.

### I.    Plaintiff's FOIA Request

---

[1] Dkt 1 at 1.

Plaintiff submitted a FOIA request to NOAA dated July 18, 2017, seeking:

(1) All correspondence to or from Glenn Merrill, Assistant Regional Administrator for the Alaska Region of NMFS, from January 1, 2016 through the present relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

For purposes of this request, the term "correspondence" includes without limitation all emails, text messages, social media messages, voice mails, facsimiles and letters, regardless of whether sent from or received on government or personal devices or transmitted through some other means.

The search for responsive correspondence should include without limitation correspondence to or from: (i) employees of NMFS and the office of National Oceanic and Atmospheric Administration General Counsel (NOAA GC); (ii) North Pacific Fishery Management Council (Council) members and staff; (iii) employees and/or representatives of entities that harvest, process, market and/or sell BS/Al crab or crab products; (iv) employees and/or representatives of trade associations or business leagues that represent entities described in clause (iii) above; (v) employees and/or representatives of entities that held BS/AI crab "quota shares" (QS). "processor quota shares" (PQS), "individual quota shares" (IFQ), "individual processing quota" (IPQ) and/or "Community development quota" (CDQ) (all defined under NMFS regulations) during the period January 1, 2016 through present; and (vi) Mr. John Sackton; and

(2) All documents relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

For the purpose of this request, the term "documents" includes without limitation all analyses, memoranda, minutes, notes, papers and other records, and all drafts of the same.[2]

## II.   The Relationship Between NOAA, NMFS and the North Pacific Fishery Management Council.

To better understand the nature of the requests that ICE made, it is useful to understand the relationship of the defendants.  This background is laid out in Dr. Balsiger's Declaration at ¶ ¶ 4-6:

The North Pacific Fishery Management Council (Council) is one of eight regional fishery management councils created by the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801 *et seq.,* as part of a system for the conservation and management of fisheries and ocean fish stocks within each region. The Council, of which Balsiger is a member, has responsibility for developing and amending fishery management plans, conducting public meetings, setting catch limits, and other activities within its region, which includes the exclusive economic zone of the Arctic Ocean, the Bering Sea, and the Pacific Ocean seaward of Alaska. The Council's fishery management plans must be approved by the Secretary of Commerce and are implemented by NMFS through regulation. The Council

_____

[2]  Exhibit 2 to the Declaration of James Balsiger, the Regional Administrator for the National Marine Fisheries Service, Alaska Region.

*Inter-Cooperative Exchange v. U.S. Dep't of Commerce, et al.*
Case No. 3:18-cv-00227-TMB          Page 4 of 22

may also recommend management measures for NMFS approval and implementation. The Council's other members include: representatives from the Pacific States Marine Fisheries Commission, the U.S. Coast Guard, the U.S. State Department, and the U.S. Fish and Wildlife Service; the principal State official with marine fishery management responsibility from the States of Alaska, Washington, and Oregon; and seven members appointed by the Secretary of Commerce who, by reason of their occupational or other experience, scientific expertise, or training are knowledgeable regarding the conservation and management, or the commercial or recreational harvest, of the fishery resources under the Council's jurisdiction. At times, the NMFS Alaska Region Assistant Regional Administrator for Sustainable Fisheries, Mr. Glenn Merrill, serves as a designee on the Council for the Regional Administrator, Dr. Balsiger.

For the purpose of fishery conservation and management, the Council has been determined to be an integral part of the DOC and NOAA, and as such, the Council and its staff fall within the group of agency constituents with whom attorneys from the NOAA Office of General Counsel (GC) interact and to whom NOAA GC attorneys provide legal advice and support. Therefore, the Council members and Council staff routinely interact with NMFS on the development of fishery conservation and management

Case 3:18-cv-00227-TMB     Document 21     Filed 09/03/19     Page 5 of 22

measures and NOAA GC attorneys advise NMFS, Council staff, and the Council during that process. As part of this relationship, NOAA GC attorneys are also present at and provide legal advice to the Council at its public meetings and official proceedings.

The communications at issue in this litigation between Council staff, NMFS staff, and NOAA GC attorneys concerning matters related to legal advice about the arbitration price formula for the Bering Sea and Aleutian Islands (BSAI) Crab Rationalization Program are illustrative of that well-established relationship.

## III.   NOAA'S PROCESSING OF THE FOIA REQUEST

As explained in Dr. Balsiger's Declaration, NOAA performed searches of the records in NMFS's Alaska Region in response to Plaintiff's request.

The offices involved in the search of NMFS's Alaska Region included the Alaska Region's Juneau Office, the NOAA GC Alaska Section Office in Juneau, and the Council's Anchorage Office. These offices were selected because they contain all of the employees who have specific knowledge of the matters described in Plaintiffs FOIA request and were likely to have potentially responsive documents. In conducting the search, NMFS examined all of Mr. Merrill's correspondence, as that term is defined in Plaintiff's FOIA request, to or from the entities and individuals specified by Plaintiff.

There were no other offices or locations where responsive records were reasonably likely to be found, and the search was calculated to uncover all relevant documents.[3]

NOAA produced one search log from this initial search.[4]  The log explains that Mr. Merrill searched his emails, the network, and his desktop for the terms "binding arbitration," "arbitration," and "crab". The search log does not show that Mr. Merrill searched his phone or his text messages. This, however, was an inadvertent error.  Although he does not possess a government work cell phone with texting capability, Mr. Merrill has confirmed that he in fact searched his personal cell phone, including his text messaging application and social media accounts, using the same search terms, in NMFS's efforts to locate all responsive documents to the FOIA request.  NOAA mistakenly did not include those locations on the search log.[5]

NOAA staff located 146 documents responsive to Plaintiff's FOIA request through its searches. On September 21, 2017, NOAA produced 139 of these documents in full to Plaintiff.  NOAA, however, determined that it had to withhold portions of the other 7 records: 6 documents were partially

---

[3]  Declaration at ¶ 9.
[4]  Declaration, Exhibit 3.
[5]  Declaration at ¶ 10.

Case 3:18-cv-00227-TMB     Document 21     Filed 09/03/19     Page 7 of 22

redacted pursuant to Exemption 5 to protect information subject to the attorney-client privilege; and 1 document was partially redacted pursuant to Exemption 6 because it contained personal information, the disclosure of which would constitute a clearly unwarranted invasion of privacy.[6]

On December 15, 2017, Plaintiff submitted an administrative appeal to DOC[7] challenging (1) the adequacy of NOAA's search related to text messages, social media messages, and voice mail messages, and (2) the partial withholding of 6 documents, pursuant to the attorney-client privilege under 5 U.S.C. § 552(b)(5).[8]

On October 4, 2018, DOC issued a decision concerning Plaintiff's administrative appeal.[9] DOC denied Plaintiff's challenge to the adequacy of the search. Looking at the search NOAA had conducted, DOC concluded:

> NOAA's search method was appropriate for the search of Mr. Merrill's text, social media and voicemail messages in response to your request. Mr. Merrill does not have an official government social media account or government cellphone with texting capability; has no recollection of

---

[6] Declaration at ¶ 11. (A copy of the September 21, 2017 correspondence is attached as Exhibit 4 to the Declaration).
[7] Declaration, Exhibit 5.
[8] Declaration at ¶ 12.
[9] Declaration, Exhibit 6

Case 3:18-cv-00227-TMB    Document 21    Filed 09/03/19    Page 8 of 22

sending or receiving text, social media or voicemail messages regarding the subject of your request; and reviewed his records (including personal records) to confirm that no such records exist that are responsive to your request. Therefore, NOAA conducted a reasonable search of such records.[10]

DOC also denied Plaintiff's challenge to the applicability of Exemption 5 to the 6 partially withheld records.[11] NOAA revised its redactions and released additional information contained in three of the six records, having determined that disclosure of these portions of those documents posed no threat of foreseeable harm.[12]

## IV. JUSTIFICATION FOR WITHHOLDING OF DOCUMENTS UNDER EXEMPTION 5

Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context and incorporates, inter alia, the attorney-client privilege.

---

[10] Declaration, Exhibit 6 at 2.
[11] *Id.* At 2-4.
[12] *Id.* At 2.

Case 3:18-cv-00227-TMB     Document 21     Filed 09/03/19     Page 9 of 22

### Attorney-Client Privilege

The attorney-client privilege protects confidential communications between an attorney and client relating to a legal matter for which the client has sought professional advice. The privilege also encompasses any opinions given by an attorney to the client based on facts provided by the client. Such communications are permanently protected from disclosure by the legal adviser unless the client waives the protection. This privilege encompasses confidential communications made to the attorney by decision-making personnel as well as lower echelon employees who possess information relevant to an attorney's advice-rendering function.

Pursuant to the attorney-client privilege, NOAA withheld information from the revised responsive records that reflect or include confidential communications among NMFS employees, Council staff, and NOAA GC attorneys related to Council matters. This includes Mr. Merrill, who is the NMFS Alaska Region Assistant Regional Administrator for Sustainable Fisheries and occasionally serves as Dr. Balsiger's designee on the Council, Lauren Smoker, an attorney with NOAA GC, and Sarah Marrinan, an economist on the Council's staff.

NMFS carefully reviewed each responsive record on a page-by-page and line-by-line basis in an attempt to identify reasonably segregable, non-exempt information.

**Segregability**

Because of Plaintiff's administrative appeal, NOAA conducted an additional segregability review, carefully reviewing each of the seven records that were partially withheld on an individual basis in order to ascertain if there was any non-exempt information withheld that could be reasonably segregated from the exempt information and released.

As a result of this additional review, NOAA determined that there was additional, segregable information in three of the six records previously withheld under Exemption 5. NOAA revised its redactions to disclose the segregable information, and DOC provided the revised redactions to Plaintiff on October 4, 2018, with the DOC appeal decision.

NMFS determined that no other information could be reasonably segregated and released to Plaintiff, as any further disclosure of those records would adversely affect the candor of future agency deliberations.

**Description of the Documents Withheld Under Exemption 5**

The following paragraphs contain a description as to why material was withheld for each of the six documents challenged by Plaintiff. The basis for

the withholdings is outlined with the accompanying *Vaughn* Index, Exhibit 1 to Dr. Balsiger's Declaration.

**Document 2000000**. This document is a 1-page email from the NMFS Assistant Regional Administrator for Sustainable Fisheries, Glenn Merrill, to NOAA GC attorney Lauren Smoker and Council Staff Economist Sarah Marrinan, seeking legal counsel on an issue relating to the crab arbitration price formula. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments and questions directed to legal counsel.[13]

**Document 2000001**. This document is a 2-page email from Ms. Marrinan to Mr. Merrill, with a copy sent to NOAA GC attorney Ms. Smoker responding to the emails in Document 2000000 and seeking legal counsel on an issue relating to the crab arbitration price formula. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments regarding the questions directed to legal counsel.[14]

**Document 2000003**. This document is a 2-page email from NOAA GC attorney Ms. Smoker to Ms. Marrinan, with a copy sent to Mr. Merrill and Maura Sullivan, Chief of the NOAA GC Alaska Section, responding to the

---

[13] Declaration at ¶ 23.
[14] Declaration at ¶ 24.

Case 3:18-cv-00227-TMB     Document 21     Filed 09/03/19     Page 12 of 22

issues raised in the emails in Document 2000001 and suggesting a meeting to discuss an issue relating to the crab arbitration price formula. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments and questions directed to legal counsel, comments regarding the questions directed to legal counsel and legal counsel's responses.[15]

**Document 2000005**. This document is a 2-page email from Mr. Merrill to NOAA GC attorney Ms. Smoker, with a copy sent to Ms. Marrinan and the NOAA GC Section Chief, Ms. Sullivan, responding to the emails in Document 2000003. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments and questions directed to legal counsel, comments regarding questions directed to legal counsel, and legal counsel's responses.[16]

**Document 2000007**. This document is a 3-page email from Ms. Marrinan to Mr. Merrill, with a copy sent to NOAA GC attorney Ms. Smoker and GC Section Chief Ms. Sullivan, responding to the emails in Document 2000005. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments and questions directed to legal

---

[15] Declaration at ¶ 25.
[16] Declaration at ¶ 26.

*Inter-Cooperative Exchange v. U.S. Dep't of Commerce, et al*.
Case No. 3:18-cv-00227-TMB          Page 13 of 22

counsel, comments regarding the questions to legal counsel and legal counsel's responses.[17]

Document 2000010. This document is a 3-page email from NOAA GC attorney Ms. Smoker to Mr. Merrill, with a copy sent to the NOAA GC Section Chief, Ms. Sullivan, and Ms. Marrinan, responding to the emails in Document 2000005, and providing legal counsel and arranging a time to talk on an issue relating to the crab arbitration price formula. The material redacted from the document, pursuant to attorney-client privilege, consisted of comments and questions directed to legal counsel, comments regarding the questions directed to legal counsel and legal counsel's responses.[18]

NOAA carefully reviewed all responsive records and properly determined that the redacted portions of the six documents at issue were exempt pursuant to the attorney-client privilege under Exemption 5.

## LEGAL BACKGROUND

### I. FOIA BACKGROUND

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins*

---

[17] Declaration at ¶ 27.
[18] Declaration at ¶ 28.

*Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Accordingly, FOIA generally

requires the disclosure of agency records upon the request of any person. 5

U.S.C. § 552(a)(3)(A).

The right to access agency records is not unlimited: FOIA includes

nine statutory exemptions to the general disclosure obligation. 5 U.S.C.

§ 552(b)(1)-(9). These exemptions reflect Congress's decision "to reach a

workable balance between the right of the public to know and the need of the

Government to keep information in confidence." *John Doe Agency v. John*

*Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-1497, at 6

(1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *accord Pickard v. Dep't of*

*Justice*, 653 F.3d 782, 790 (9th Cir. 2011) (Wallace, J., concurring) ("'Congress

established FOIA' to strike a balance between the public's interest in

knowing 'what [its] government is up to' and the 'legitimate governmental or

private interests' in withholding documents subject to FOIA's exemptions."

(quoting *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 385

(D.C. Cir. 2007))). Although the nine FOIA exemptions should be "narrowly

construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court

has made clear that they must be given "meaningful reach and application,"

*John Doe Agency*, 493 U.S. at 152.

## II.    SUMMARY JUDGMENT IN FOIA LAWSUITS

A court reviews an agency's response to a FOIA request de novo. 5 U.S.C. § 552(a)(4)(B). Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Agency records are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *DOJ v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Because facts in FOIA cases are rarely in dispute, "[m]ost FOIA cases are resolved by the district court on summary judgment." *Animal Legal Defense Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016); *accord Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all FOIA determinations should be resolved on summary judgment."). Discovery is seldom necessary or appropriate. *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

An agency bears the burden of establishing the adequacy of its search for records responsive to a FOIA request. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Similarly, the agency bears the burden of justifying the assertion of FOIA exemptions to redact or withhold documents. 5 U.S.C. § 552(a)(4)(B). To meet these burdens, an agency may rely upon reasonably detailed, non-conclusory affidavits. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *Zemansky*, 767 F.2d at 571. An affidavit that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption" is "commonly referred to as a '*Vaughn* index.'" *Lion Raisins Inc. v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987 (9th Cir. 2016).

Affidavits submitted by an agency are entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)). "Ultimately, an agency's justification for invoking a

FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).

## A.   Adequacy of a Search

Federal agencies must conduct searches that are reasonably calculated to locate all agency records responsive to a FOIA request. 5 U.S.C. § 552(a)(3)(C)-(D); *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485). "[T]here is no requirement that an agency search every record system . . . or that a search be perfect." *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1130 (citing cases). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quotation omitted; emphasis original). Accordingly, "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

As noted above, to justify its search for purposes of summary judgment, an agency may provide an affidavit explaining its search in reasonable detail. *Zemansky*, 767 F.2d at 571; *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)

("[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Once an agency has submitted a non-conclusory, detailed declaration establishing that its search for responsive records was adequate, the burden shifts to plaintiff to produce evidence undermining the presumption of good faith that a court must give to that declaration. *See Lahr*, 569 F.3d at 987-88; *Laughlin v. Comm'r*, 103 F. Supp. 2d 1219, 1222 (S.D. Cal. 1999).

## B. Withholding of Records under FOIA

In response to a FOIA request for records, an agency must withhold records where their disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). Exemption 5 incorporates the traditional privilege of "confidential communications between an attorney and his (or her) client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U. S. Dep't of the Air Force*, 566 F.2d 242, 252 (D. C. Cir. 1977). Unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation. *Id*. at 252-53. Although it fundamentally applies to facts divulged by a client to her attorney, this privilege also encompasses any opinion given by an attorney to his client

based upon, and thus reflecting, those facts. *See, e.g., Jernigan v. Dep't of Air Force*, 1998 WL 658662 at *2 (9th Cir. Sept 17, 1998) (holding that privilege covers agency attorney's legal review of internal investigation).

The Supreme Court, in the civil discovery context, has emphasized the public policy underlying the attorney-client privilege – "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 3889 (1981). The Court further concluded that the privilege encompasses confidential communications made to the attorney not only by the decision making "control group" personnel, but also by lower-echelon employees. *Id*. At 392-97. This construction acknowledges the reality that lower-echelon personnel often possess information relevant and necessary to an attorney's advice-rendering function.

## ARGUMENT

Based upon the above facts and law, the Defendants have discharged their obligations under FOIA by (1) conducting reasonable searches for responsive materials and (2) invoking proper legal authority when withholding documents or portions of documents that were otherwise responsive to ICE's FOIA request.

# I.      Defendants are ENTITLED TO SUMMARY JUDGMENT.

## A.      A Reasonable Search was Conducted.

As explained above, NOAA conducted a reasonable search for records relating to ICE's request.  NOAA's search method was appropriate for the search of Mr. Merrill's text, social media and voicemail messages.  Mr. Merrill did not have an official government social media account or government cellphone with texting capability; he has no recollection of sending or receiving text, social media or voicemail messages regarding the subject of the request and he reviewed his records (including personal records) to confirm that no such records exist that were responsive to ICE's request.

NOAA's search was "reasonably calculated to uncover all relevant documents." *See Zemansky*, 767 F.2d at 571.

## B.      NOAA PROPERLY INVOKED FOIA EXEMPTIONS.

NOAA properly invoked FOIA exemption 5 to withhold the 6 emails that involved the back-and-forth between Merrill and NOAA GC attorney Lauren Smoker.  This is precisely the communications between attorney and client that the privilege is designed to protect.

# CONCLUSION

Defendants have discharged their obligations under FOIA by responding to ICE's FOIA requests and producing all responsive documents to which ICE is entitled. As such, Defendants are entitled to summary judgment.

RESPECTFULLY SUBMITTED, on September 3, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney


s/ Richard L. Pomeroy
RICHARD L. POMEROY
Assistant U.S. Attorney
Attorney for the Defendants


**CERTIFICATE OF SERVICE**
I hereby certify that on September 3, 2019,
a copy of the foregoing was served
electronically on:

Michelle DeLappe

s/ Richard L. Pomeroy
Office of the U.S. Attorney