**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

INTER-COOPERATIVE EXCHANGE, an
Alaska cooperative corporation,

                         Plaintiff,

          v.

UNITED STATES DEPARTMENT OF
COMMERCE, NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION, and
NATIONAL MARINE FISHERIES
SERVICE,

                         Defendants.

Case No. 3:18-cv-00227-TMB

**ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (DKT. 21)
AND PLAINTIFF'S MOTION FOR
DISCOVERY (DKT. 24)**

## I.    INTRODUCTION

The matter comes before the Court on Defendants the United States Department of

Commerce ("DOC"), the National Oceanic and Atmospheric Administration ("NOAA"), and the

National Marine Fisheries Service's ("NMFS") (collectively, "Defendants") Motion for Summary

Judgment ("Motion for Summary Judgment").[1] On September 24, 2019, Plaintiff Inter-

Cooperative Exchange filed an Opposition to the Motion for Summary Judgment ("Opposition").[2]

Plaintiff simultaneously filed a related Motion for Written Discovery ("Motion for Discovery").[3]

Defendants filed a Reply to the Opposition ("Defendants' Reply") on October 8, 2019, which also

argued their opposition to the Motion for Discovery.[4] On October 18, 2019, Plaintiff filed its Reply

---

[1] Dkt. 21 (Motion for Summary Judgment).

[2] Dkt. 23 (Opposition).

[3] Dkt. 24 (Motion for Discovery).

[4] Dkt. 28 (Defendants' Reply). *See* Dkt. 29 (Opposition to Motion for Discovery).

in Support of Motion for Written Discovery ("Plaintiff's Reply").[5] Both Defendants' Motion for

Summary Judgment and Plaintiff's Motion for Discovery are fully briefed. Plaintiff requested oral

argument on both motions and a hearing was held on November 25, 2019.[6] Upon careful

consideration of the record, and for the reasons stated below, Defendants' Motion for Summary

Judgment at docket 21 is **GRANTED** and Plaintiff's Motion for Discovery at docket 24 is

**DENIED**.

## II.    BACKGROUND

*A. Factual Background*

Plaintiff is a cooperative of fishermen who harvest and deliver crab in the Bering Sea and

Aleutian Islands.[7] Defendants are federal agencies responsible for regulating and enforcing the

nation's fisheries through regional fishery management councils.[8] In 2005, Defendants

implemented a crab price arbitration system to guide price negotiations between harvesters and

processors.[9] Historically, business costs were not considered in the price formula.[10] However, in

2014, Alaska voters approved an initiative to raise the minimum wage.[11] In response, crab fishery

processor representatives requested that Defendants reevaluate whether to consider costs—such as

---

[5] Dkt. 32 (Plaintiff's Reply).

[6] *See* Dkts. 23; 24; 33 (Order Granting Oral Argument); 34 (Minute Entry).

[7] Dkt. 1 at 1 (Complaint).

[8] *Id.* at 1–2.

[9] *Id.* at 2–5.

[10] *Id.* at 6.

[11] *Id.*

the now higher wages paid to processor employees—under the arbitration system.[12] Defendants agreed to prepare a discussion paper on the issue and the paper was published in April 2017.[13] Thereafter, Glenn Merrill, NMFS' Assistant Regional Administrator for the Alaska Region ("ARA"), introduced a motion to include costs for consideration in the arbitration system.[14]

On July 18, 2017, Plaintiff submitted a Freedom of Information Act ("FOIA") request to Defendants in an effort to determine the record behind Mr. Merrill's motion and his underlying rationale.[15] Plaintiff requested the following two categories of records:

1) All correspondence to or from Glenn Merrill, Assistant Regional Administrator for the Alaska Region of NMFS, from January 1, 2016 through the present relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

For purposes of this request, the term "correspondence" includes without limitation all emails, text messages, social media messages, voice mails, facsimiles and letters, regardless of whether sent from or received on government or personal devices or transmitted through some other means.

[ . . . ]

2) All documents relating to (a) interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

---

[12] *Id.*

[13] *Id.* at 6–7.

[14] *Id.* at 7.

[15] *Id.* at 8; Dkt. 1-5 (FOIA Request).

For purposes of this request, the term "documents" includes without limitation all analyses, memoranda, minutes, motions, notes, papers and other records, and all drafts of the same.[16]

Defendants responded to Plaintiff's FOIA request and produced 146 records, including several emails with redactions.[17] Finding Defendants' FOIA response insufficient, on December 15, 2017, Plaintiff filed an administrative appeal on the grounds that the response did not include any of Mr. Merrill's text messages, social media messages, and voicemail messages and redacted certain email correspondence.[18]

## B. Procedural Background

On October 2, 2018, having received no response to its administrative appeal, Plaintiff filed the Complaint in this Court.[19] Plaintiff alleges that Defendants violated FOIA on two grounds: (1) Defendants failed to make reasonable efforts to search for, and has improperly withheld, records responsive to Plaintiff's FOIA request, and (2) Defendants improperly redacted certain records subject to production.[20] Specifically, Plaintiff believes that there are further agency records reflecting discussion between Mr. Merrill and others concerning Mr. Merrill's motion to consider costs in pricing arbitration.[21] Plaintiff further argues that the redacted emails in Defendants' production were improperly redacted because the emails constitute part of the publicly available administrative record and because Defendants failed to explain how disclosure of the emails could

---

[16] Dkt. 1-5 at 2–3.

[17] Dkts. 1 at 9; 1-6 (FOIA Response).

[18] Dkts. 1 at 10; 1-7 (FOIA Appeal).

[19] Dkt. 1.

[20] *Id.* at 12–14.

[21] *Id.* at 11.

foreseeably harm an interest protected by their asserted exemptions to disclosure.[22] Plaintiff, therefore, requests a judicial declaration that Defendants have violated FOIA, an order compelling Defendants to search for and produce the sought-after agency records without redaction, and an award of attorneys' fees and litigation costs.[23]

On February 22, 2019, Defendants filed an Answer and lodged the decision in Plaintiff's administrative appeal of its FOIA request ("Appeal Decision").[24] The Appeal Decision granted Plaintiff's appeal with respect to the foreseeable harm issue and revised redactions to release information contained in three previously produced records.[25] However, Plaintiff's appeal was denied with respect to the adequacy of the search and the remaining redactions.[26] The Appeal Decision states that Mr. Merrill does not have a government-issued cellphone or official government social media account.[27] Moreover, the Appeal Decision states that Mr. Merrill has no recollection of sending or receiving responsive text, social media, or voicemail messages responsive to Plaintiff's request but reviewed his personal records to confirm that no such responsive records exist.[28]

---

[22] *Id*. at 13–14.

[23] *Id.* at 14.

[24] Dkts. 11 (Answer); 11-1 (Appeal Decision).

[25] Dkt. 11-1 at 2.

[26] *Id.*

[27] *Id.*

[28] *Id.*

1. <u>Defendants' Motion for Summary Judgment</u>

Then, on September 3, 2019, Defendants filed a Motion for Summary Judgment arguing that they have adequately discharged their obligations under FOIA.[29] First, Defendants argue that they conducted a reasonable search for responsive records.[30] Defendants allege that they performed a search of NMFS' Alaska Region offices and "examined all of Mr. Merrill's correspondence, as that term is defined in Plaintiff's FOIA request."[31] Defendants reference the single search log from their initial response.[32] The search log states that Mr. Merrill searched his emails, network drive, and desktop for the terms "binding arbitration," "arbitration," and "crab."[33] Defendants explain that the omission of any search of Mr. Merrill's cellphone and social media was an "inadvertent error."[34] Defendants confirm that Mr. Merrill searched his personal cellphone since he does not have a government-issued work cellphone and found no responsive records.[35] Therefore, Defendants contend that their search was reasonably calculated to uncover all relevant documents.[36]

---

[29] Dkt. 21.

[30] *Id.* at 21.

[31] *Id*. at 6–7.

[32] *Id.* at 7; Dkt. 21-4 (Search Log).

[33] Dkt. 21 at 7.

[34] *Id.*

[35] *Id.* at 21.

[36] *Id.*

Next, as for the redacted records, Defendants allege that NOAA withheld portions of seven records pursuant to certain statutory exemptions from disclosure under FOIA.[37] Six documents were partially redacted to protect information subject to attorney-client privilege and one document was partially redacted to protect personal information from a clearly unwarranted invasion of privacy.[38] Defendants justify that the six documents redacted due to attorney-client privilege contain confidential communications between NMFS employees, fishery council staff, and NOAA Office of General Counsel attorneys.[39] Defendants argue that an exemption from disclosure was properly invoked because those emails are exactly the communications the privilege is designed to protect.[40]

Plaintiff filed the Opposition and requested oral argument on the issues.[41] Plaintiff argues that the Court should deny summary judgment on both the adequacy of the search and the propriety of the redactions. Plaintiff claims that the Motion for Summary Judgment "presents a new set of facts" and undermines the adequacy of Defendants' search by not providing sufficient details regarding the search.[42] Plaintiff argues that Defendants' search parameters and process were not reasonably calculated to uncover responsive communications.[43] Plaintiff further alleges that

---

[37] *Id.* at 7–8.

[38] *Id.*

[39] *Id.* at 10–14.

[40] *Id.* at 21.

[41] Dkt. 23.

[42] *Id.* at 10, 12.

[43] *Id.* at 12–15.

additional evidence contradicts Mr. Merrill's assertions that he does not use his personal cellphone to conduct government business.[44]

Moreover, Plaintiff argues that Defendants cannot claim attorney-client privilege to justify the email redactions on two grounds.[45] First, Plaintiff claims that no attorney-client relationship existed between councilmembers and NOAA attorneys.[46] Second, Plaintiff claims that there was no reasonable expectation of confidentiality because the emails prepared for or by council members incident to a public meeting form part of the public record.[47] So, for the sake of argument, even if attorney-client privilege existed, the emails at issue now would still be subject to disclosure because no reasonable expectation of confidentiality attached to the communications.[48]

In Defendants' Reply,[49] Defendants repeat that they adequately searched Mr. Merrill's email, network, desktop, and personal cellphone for any items containing the search terms "binding arbitration," "arbitration," and "crab."[50] In response to Plaintiff's claims that Defendants did not provide sufficient detail of the search, Defendants lodged a Declaration by Mr. Merrill.[51] Defendants assert that the previously submitted Declaration of Dr. Balsiger,[52] Mr. Merrill's direct

---

[44] *Id*. at 16–19.

[45] *Id.* at 22.

[46] *Id.* at 23–24.

[47] *Id.* at 28.

[48] *Id*. at 29.

[49] Dkt. 28.

[50] *Id*. at 3.

[51] Dkt. 28-1 (Declaration of Mr. Merrill).

[52] Dkt. 21-1 (Declaration of Dr. Balsiger).

supervisor, was sufficient; the addition of Mr. Merrill's own Declaration "remove[s] any doubt and counter[s] Plaintiff's suggestions of bad faith."[53] Furthermore, Defendants counter Plaintiff's denial of any attorney-client relationship between NOAA Office of General Counsel attorneys and the regional crab fishery council.[54] Defendants contend that attorney-client privilege extends to the redacted emails because they involve a legal question and response between an NOAA attorney, a NMFS official, and information provided by a councilmember.[55] Defendants conclude that they have discharged their duties under FOIA, the Motion for Summary Judgment should be granted, and the case should be dismissed.[56]

    2.  Plaintiff's Motion for Written Discovery

Concurrent with its Opposition to the Motion for Summary Judgment, Plaintiff filed a related Motion for Written Discovery.[57] Plaintiff argues that it should be allowed to propound written interrogatories and requests for production of documents to further examine whether the scope and depth of Defendants' search were reasonably calculated to uncover responsive records to Plaintiff's FOIA requests.[58] Plaintiff claims that countervailing evidence shows that Defendants have not satisfied their burden of proving an adequate search.[59] The evidence consists of a text message log obtained by Plaintiff through a supplemental FOIA request to another agency; the

---

[53] Dkt. 28 at 6.

[54] *Id*. at 17.

[55] *Id*. at 20–22.

[56] *Id*. at 23.

[57] Dkt. 24.

[58] *Id.* at 3.

[59] *Id*. at 5.

message log shows that Mr. Merrill used his personal cellphone to text another councilmember's government-issued cellphone during council meetings.[60] Plaintiff asserts that this evidence indicates there are "significant factual gaps" in the Defendants' FOIA production and arguments in the Motion for Summary Judgment.[61] Therefore, Plaintiff requests permission to issue written discovery.[62]

Defendants incorporated their Opposition to Plaintiff's Motion for Discovery into their Reply to Plaintiff's Opposition to Motion for Summary Judgment.[63] In summary, Defendants assert that they conducted an adequate search and, as such, no basis exists for Plaintiff's discovery requests.[64]

Plaintiff then filed a Reply in Support of Motion for Written Discovery on October 15, 2019.[65] Plaintiff contests that the Declaration of Mr. Merrill, submitted with Defendants' Reply, still leaves important questions unanswered.[66] Plaintiff expresses doubt as to Defendants' claim that Mr. Merrill only exchanged text messages of a personal nature with another councilmember and that the Defendants are relying on Mr. Merrill's recollection instead of simply verifying whether the messages were personal.[67] Finally, Plaintiff argues that Defendants

---

[60] *Id.*

[61] *Id.* at 7

[62] *Id.*

[63] Dkts. 29; 28.

[64] Dkt. 28 at 3.

[65] Dkt. 32.

[66] *Id.* at 3–4.

[67] *Id.* at 5–6.

incorrectly assume Plaintiff must show bad faith to obtain discovery.[68] Rather, Plaintiff believes that Defendants have failed in their obligation to conduct a reasonable search and that discovery should be permitted, including *in camera* inspection of certain text messages.[69]

### 3. Oral Argument

At the November 25, 2019, hearing, the Parties largely reargued the points made in their written briefs. Defendants maintained that their search was reasonable and that attorney-client privilege indeed justified redacting certain portions of emails between NMFS and council employees and an NOAA attorney. In addition, Defendants submitted the redacted emails for *in camera* review. In response, Plaintiff suggested two tests to assess the reasonableness of Defendants' search. Plaintiff also reiterated its position that an attorney-client relationship did not exist and, even to the extent a relationship may have existed between Mr. Merrill and the NOAA attorney, they waived privilege by including the council staff member. The Court will address the foregoing issues in turn.

## III.    LEGAL STANDARD

### A. *Summary Judgment*

A party may move for summary judgment on a claim, a defense, or a part of either under Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[70] "the movant shows that there is no genuine dispute as to any material fact and the movant

---

[68] *Id.* at 7.

[69] *Id.*

[70] *Scott v. Harris*, 550 U.S. 372, 379 (2007).

is entitled to judgment as a matter of law."[71] Material facts are those which might affect the outcome of the case.[72] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[73] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[74] A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[75] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[76]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[77] Evidence introduced in opposition to a summary judgment motion does not have to be admissible at trial; the permissible evidence is identified in Fed. R. Civ. P. 56(c).[78] However, "conclusory assertions are wholly

---

[71] Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130-31 (9th Cir. 1994).

[72] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[73] *Id.*

[74] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[75] *Celotex*, 477 U.S. at 325.

[76] *Anderson*, 477 U.S. at 249.

[77] *Celotex*, at 323–24.

[78] *See, e.g., id.*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

insufficient to sustain either the [moving party's] burden or the district court's grant of summary judgment."[79] Moreover, "[a] party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed.'"[80]

B.  *Summary Judgment in FOIA Cases*

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law."[81] To prevail on summary judgment in a FOIA case, the federal agency must establish: (1) that its search for responsive documents was "reasonably calculated to uncover all relevant documents;"[82] and (2) that any non-disclosure is properly justified by a FOIA exemption.[83] An agency can demonstrate the adequacy of its search through "reasonably detailed, nonconclusory affidavits submitted in good faith."[84] Similarly it is the

---

[79] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990). *See also Hilsinger v. Enerco Group, Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381 (D. Alaska Sept. 3, 2014); *Mills*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.")).

[80] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979)).

[81] *Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016).

[82] *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

[83] *Berman v. C.I.A.*, 501 F.3d 1136, 1139–40 (9th Cir. 2007). *See Natl. Imm. Law Center v. U.S. Imm. and Customs Enforcement*, CV 14-9632 PSG (MANx), 2015 WL 12684437, at *2 (C.D. Cal. Dec. 11, 2015) (citing *Zemansky*, 767 F.2d at 571).

[84] *Zemansky*, 767 F.2d at 571 (internal quotations omitted).

agency's burden to demonstrate that the materials sought have not been improperly withheld.[85]

"Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought."[86] However, if the record raises "substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate."[87]

## IV.  ANALYSIS

### A.  *Adequacy of Defendants' Search*

Here, Plaintiff filed the Complaint, in part, on the basis that Defendants' search for responsive correspondence—particularly the search of Mr. Merrill's text, social media, and voicemail messages—was insufficient.[88] Defendants move for summary judgment and submit declarations of Mr. Merrill and his direct supervisor, Dr. Balsiger, to confirm that Mr. Merrill searched his cellphone and social media accounts.[89] In Opposition, Plaintiff contends that the declarations leave important questions unanswered.[90] At oral argument, Plaintiff asserted that, according to their electronic discovery expert, a manual search of cellphone messages is not

---

[85] *Rojas v. Federal Aviation Admin.*, 941 F.3d 392, 396 (9th Cir. 2019) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

[86] *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), overruled on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). *See also Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008) ("If the affidavits contain reasonably detailed descripts of the documents and allege facts sufficient to establish an exemption, the district court need look no further.") (internal quotations omitted).

[87] *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotations and citations omitted).

[88] Dkt. 1 at 12.

[89] Dkts. 21, 21-1, 28, and 28-1.

[90] Dkt. 23 at 12.

reliable. Rather, the typical protocol for cellphone evidence requires first backing up the phone, then searching the extracted phone data. Plaintiff's counterpoints are unavailing and fail to cast doubt on Defendants' reasonable search.

As stated above, FOIA obligations require the federal agency's search be "reasonably calculated to uncover all relevant documents."[91] The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."[92]

Defendants have conducted an adequate search for correspondence responsive to Plaintiff's FOIA requests. The record shows that Defendants did in fact conduct adequate search of Mr. Merrill's text, social media, and voicemail messages. In the Motion for Summary Judgment, Defendants admit that they made an "inadvertent error" when their initial response to Plaintiff's FOIA request did not show that Mr. Merrill searched his text, social media, and voicemail messages.[93] Defendants attempt to correct this omission by clarifying that Mr. Merrill does not have a government-issued work cellphone or social media account.[94] Instead, Mr. Merrill "confirmed that he in fact searched his personal cell phone, including his text messaging application and social media accounts."[95] Defendants further provide the Declaration of Dr. Balsiger, in which Dr. Balsiger avers that he oversees NMFS' review and responses to FOIA

---

[91] *Zemansky*, 767 F.2d at 571 (internal quotations omitted).

[92] *Id.* (internal quotations omitted) (emphasis in original).

[93] Dkt. 21 at 7.

[94] *Id*. at 21.

[95] *Id.*

requests and that, based on his personal knowledge, Mr. Merrill searched his personal cell phone.[96] Specifically, Dr. Balsiger states that Mr. Merrill searched his text messaging application and social media accounts using the same three search terms, "binding arbitration," "arbitration," and "crab."[97] Defendants assert that the search of Mr. Merrill's personal records did not uncover any responsive material to Plaintiff's request.[98]

Even though the Declaration of Dr. Balsiger is sufficient,[99] Defendants also submitted a Declaration of Mr. Merrill to address in additional detail the questions raised by Plaintiff.[100] Mr. Merrill explains that he met with the FOIA and Records Coordinator for NMFS Alaska Region and an NOAA Office of General Counsel attorney to discuss how to respond to Plaintiff's FOIA Request.[101] They selected the three search terms because those terms "reflected the specific parameters of Plaintiff's FOIA request, and were likely to appear in any potentially responsive documents."[102] He then checked his iMessage, Facebook, and WhatsApp accounts on his personal cellphone and found no records responsive to Plaintiff's FOIA request.[103] Mr. Merrill does not have other social media accounts or any recollection of using other text messaging applications

---

[96] Dkt. 21-1 at 1, 27.

[97] *Id.* at 5.

[98] Dkt. 21 at 21.

[99] *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 990 (9th Cir. 2009) ("As a general matter, '[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy' the personal knowledge requirement of Federal Rule of Civil Procedure 56(e).") (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994)).

[100] Dkt. 28-1.

[101] *Id.* at 3.

[102] *Id.* at 4.

[103] *Id.*

during the time period at issue.[104] Finally, Mr. Merrill listened through his voicemail and found no responsive records.[105] Despite its contention otherwise, Plaintiff is not entitled to a forensic search of Mr. Merrill's cellphone.[106]

Mr. Merrill further clarifies that he used "a standard internal form that NOAA prepares . . . in response to a FOIA request."[107] Subsequent to completing the form, Mr. Merrill realized that he had "inadvertently omitted" listing the search of his personal cellphone and reached out to the supervising agencies to clarify and correct that omission.[108] Based on Mr. Merrill's declaration, it is clear that Defendants conducted a search using reasonably calculated search terms and did not uncover any responsive records other than the ones already produced. To this point, Defendants have met their burden for summary judgment.

Now, it is Plaintiff's burden to show that material facts remain at issue and that Defendants' affidavits are impugned by bad faith.[109] To do so, Plaintiff refers to a message log obtained in a separate FOIA request showing that Mr. Merrill exchanged text messages with another councilmember, Mr. Tweit, during council meetings.[110] Plaintiff infers that messages exchanged between councilmembers during council meetings must be official government business and that

---

[104] *Id.*

[105] *Id.*

[106] *See Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("Plaintiffs were entitled to a reasonable search for records, not a perfect one. And a reasonable search is what they got.").

[107] Dkt. 28-1 at 4.

[108] *Id.* This perhaps explains why the Appeal Decision references Mr. Merrill's "personal records" in parentheses.

[109] *Zemansky*, 767 F.2d at 573.

[110] Dkt. 23 at 17–18.

the existence of these messages undermines Mr. Merrill's claim that he does not conduct government business on his personal accounts.[111]

Plaintiff's conclusion is directly contradicted by Mr. Merrill's declaration and other information obtained in the separate FOIA request. Mr. Merrill has definitively stated that his personal cellphone does not contain any messages that are responsive to Plaintiff's FOIA request.[112] Moreover, Plaintiff acknowledges that even the messages between Mr. Merrill and Mr. Tweit were not produced in response to their subsequent FOIA request, indicating that the content of those messages were not relevant, official government business, or responsive to the FOIA request. Therefore, the existence of these additional messages does not create an issue of material fact or establish bad faith on Defendants' part. Plaintiff has not met its burden.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to the adequacy of their search.

### B. *Propriety of Defendants' Redactions*

Plaintiff complains that Defendants improperly redacted email correspondence between various agency and council representatives that should otherwise be publicly available.[113] In response to Plaintiff's initial FOIA request, Defendants had produced 146 records; six of those records contained redactions under 5 U.S.C. § 552(b)(5) ("Exemption 5") and one record contained redactions under 5 U.S.C. § 552(b)(6) ("Exemption 6").[114] Plaintiff then only appealed the redactions made under Exemption 5. The Appeal Decision granted in part and denied in part

---

[111] *Id.*

[112] Dkt. 28-1 at 4.

[113] Dkt. 1 at 13–14.

[114] Dkt. 1-6 at 3.

Plaintiff's appeal and enclosed revised redactions for three of the six records.[115] On Motion for Summary Judgment, Defendants describe the six email records to involve communications between Mr. Merrill, Ms. Smoker, a NOAA Office of General Counsel attorney, and Ms. Marrinan, a council staff member.[116] The content of these emails purportedly seek, offer, or comment upon legal counsel relating to the crab arbitration price formula.[117] Defendants assert these emails fall squarely within attorney-client privilege.[118]

Pursuant to Exemption 5, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" are generally protected from FOIA disclosure.[119] Exemption 5 incorporates traditional privileges found in civil discovery, including attorney-client privilege.[120] Once again, it is the agency's burden "to show that an exemption properly applies to the records it seeks to withhold."[121] "[A] party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication."[122] Courts should give "considerable deference to agency affidavits made

---

[115] Dkt. 21-7.

[116] Dkt. 21 at 10.

[117] *Id.* at 12–14.

[118] *Id.* at 10.

[119] 5 U.S.C. § 552(b)(5).

[120] *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("it is reasonably to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context.").

[121] *Hamdan*, 797 F.3d at 772 (citing *Lahr*, 569 F.3d at 973).

[122] *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)) (emphasis added).

in apparent good faith where the affidavits reasonably describe the justifications for nondisclosure and show that the content withheld falls within one of FOIA's exemptions."[123]

The Ninth Circuit follows an eight-part test to determine whether information is protected under the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] insistence permanently protected (7) from disclosure by [the client] or by the legal adviser, (8) unless the protection be waived.[124]

The Court has conducted an *in camera* review of the emails and finds that attorney-client privilege warrants the redactions at issue. Applying the eight-part test, the first three factors concern the content of the communications. First, it is clear that Ms. Marrinan initiated the email chain as a "head's up" to start a conversation seeking legal advice. Second, Ms. Smoker acts in her capacity as a professional legal advisor by giving her legal opinions and instructing on the legal process. Third, the redacted communications clearly focus on a shared interest in a legal issue. There is no dispute that the redacted content qualifies as legal advice.

As for the remaining five factors, Plaintiff contends that an attorney-client relationship cannot exist between Ms. Marrinan and Ms. Smoker because Ms. Marrinan's position as a council staff member does not qualify as federal employment under NOAA. Plaintiff argues the council is a unique creature that is neither federal nor state. To the contrary, regional fishery councils were established by the federal government under the Magnuson-Stevens Act.[125] Each council operates

---

[123] *Hamdan*, 797 F.3d at 772.

[124] *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *Ruehle*, 583 F.3d at 607).

[125] 16 U.S.C. § 1852; 50 C.F.R. § 600.10.

under the authority of the Secretary of Commerce.[126] At oral argument, Defendants stated that councils do not have independent legal advisors of their own so they obtain legal advice from the NOAA Office of General Counsel.[127] For example—and of particular relevance to this case—FOIA requests received by a council are coordinated through the appropriate NMFS Regional Office and denials of requested information must be approved by the NOAA General Counsel's Office.[128] Therefore, council staff members, like Ms. Marrinan, may invoke the attorney-client relationship with NOAA Office of General Counsel.

Even if, for the sake of argument, no clear attorney-client relationship existed between Ms. Smoker and Ms. Marrinan, the communications including Ms. Marrinan are still protected from disclosure. "[C]ourts have agreed that [attorney-client] privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice."[129] The agency must show that the confidential information was "circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication."[130] Here, Ms. Marrinan is a staff economist for the council, to whom Plaintiff's attorney, Joe Sullivan, specifically reached out to discuss the

---

[126] 50 C.F.R. § 600.5(a) ("The Councils are institutions created by Federal law and must conform to the uniform standards established by the Secretary in this part.").

[127] *See* Dkt. 21-1 at 3.

[128] 50 C.F.R. § 600.155. *See also* 50 C.F.R. § 600.135(e) (requiring the council to consult with NOAA Office of General Counsel before closing public meetings).

[129] *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.D.C. 1980).

[130] *Id.* (quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 n.24 (D.D.C. 1977)).

underlying crab arbitration issue.[131] This indicates that Plaintiff believed Ms. Marrinan to be in a position to speak on behalf of the council regarding the issue. Ms. Marrinan then emailed Mr. Merrill and Ms. Smoker for their input. The communications thereafter seek and involve legal advice and circulated only between Ms. Marrinan, Mr. Merrill, and NOAA General Counsel.[132] Therefore, it is clear the emails circulated within an attorney-client relationship and including Ms. Marrinan does not defeat attorney-client privilege.[133]

Now, turning back to the last five factors of the test, the Court finds that an attorney-client relationship does exist between all active participates in the email thread. The council and NMFS are clients of NOAA Office of General Counsel. The information contained in the email was made in confidence and intended to be protected from disclosure. This is clear from Mr. Balsiger's Declaration[134] and the fact that Defendants actively considered and revised redactions in their FOIA response. Moreover, the privilege was not waived. Ms. Marrinan could have simply included Mr. Sullivan in the email thread to continue their discussion about the crab arbitration issue but did not do so. It appears Ms. Marrinan hoped to seek the advice of Mr. Merrill and Ms. Smoker outside Mr. Sullivan's presence. Finally, Plaintiff does not offer additional evidence to raise an issue of material fact or show bad faith on the Defendants' behalf with respect to the redactions.

---

[131] Dkt. 23-1 at 5 (Declaration of Joseph M. Sullivan).

[132] At some point, Maura Sullivan was included in the email threat. *See* Dkt. 23-5 (Emails). Although the Parties have not explained this, the Court takes judicial notice that Ms. Sullivan is the Deputy Chief of NOAA's General Counsel Office. *See* NOAA Office of General Counsel Staff Directory, https://www.gc.noaa.gov/gcil_sullivan_bio.html (last visited November 29, 2019).

[133] Finding otherwise in this case may allow a party to circumvent claims of attorney-client privilege by approaching a third-party with a legal question in anticipation that the third-party will broach the issue with the agency and its counsel, thereby piercing the privileged relationship.

[134] Dkt. 21-1 at 7–8.

Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to the redacted emails.

## C. *Plaintiff's Motion for Written Discovery*

Plaintiff contends that the Court should permit discovery concerning the adequacy of Defendants' search.[135] Plaintiff seeks permission to serve interrogatories and request production of documents concerning the search of Mr. Merrill's cell phone and any measures Defendants have taken to preserve potentially responsive records.[136] Defendants oppose the Motion for Written Discovery on the very same grounds as they are moving for summary judgment.[137]

A district court has wide latitude in controlling discovery and, in FOIA cases, discovery is generally "limited because the underlying case revolves around the propriety of revealing certain documents."[138] Discovery may be granted "if a plaintiff has made a sufficient showing of bad faith, raised a sufficient question of an agency's good faith, or when a factual dispute exists and a plaintiff questions the affidavits submitted by the agency."[139] Otherwise, a court may grant summary judgment before the plaintiff conducts discovery.[140]

---

[135] Dkt. 24.

[136] *Id.* at 7.

[137] Dkts. 28; 29.

[138] *Lane*, 523 F.3d at 1134.

[139] *Pebble Limited Partnership v. U.S. Envtl. Prot. Agency*, No. 3:14-cv-0199-HRH, 2015 WL 6123614, at *2 (D. Alaska Aug. 24, 2015) (quoting *Bangoura v. U.S. Dep't of Army*, No. Civ. A. 05-0311, 2006 WL 3734164, at *3 (D.D.C. Dec. 8, 2006)).

[140] *Lane*, 523 F.3d at 1134 (citing *Miscavige v. IRS*, 2 F.3d 366, 36 (11th Cir. 1993), *Nolan v. Dep't of Justice*, 973 F.2d 843, 849 (10th Cir. 1992), and *Simmons v. Dep't of Justice*, 796 F.2d 709, 711–12 (4th Cir. 1986)).

Here, Plaintiff acknowledges that "courts generally decide [FOIA] cases without discovery" but argues that this is a rare instance where limited discovery is appropriate.[141] The Court disagrees this case warrants such an exception. Where Plaintiff cites "significant factual gaps,"[142] the Court finds Defendants' allegations—although at times forsaking clarity for brevity—have consistently reiterated the same fact: Defendants searched Mr. Merrill's records, including text, social media, and voicemail messages on his personal cellphone, and found no correspondence responsive to Plaintiff's FOIA request. Because the Court finds that Defendants' search is adequate and Plaintiff's "countervailing evidence" inadequate,[143] there is no further need for discovery concerning Defendants' search.

Therefore, Plaintiff's Motion for Written Discovery is **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment at docket 21 is **GRANTED** and Plaintiff's Motion for Discovery at docket 24 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 16th day of December, 2019.

/s/   *Timothy M. Burgess*

TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[141] Dkt. 28 at 2.

[142] *Id*. at 7.

[143] *Supra*, Section A.